TRAVELERS INSURANCE COMPANY, a foreign corporation, as Subrogee of Coutinho, Caro Co., Inc., Plaintiff,

v.

SS HERMINE, Its Boats, Tackle, Superstructure, etc., et al., Defendants.

No. C 68–302.

United States District Court, N. D. Ohio, W. D.

April 15, 1970.

---

Leonard C. Jaques, Detroit, Mich., for plaintiff.

David G. Davies, Arter & Hadden, Cleveland, Ohio, for S.S. Hermine.

Edward J. Cass, Cleveland, Ohio, for Cleveland Stevedoring Co.

## OPINION

DON J. YOUNG, District Judge.

This is an action governed by the Carriage of Goods By Sea Act, 46 U.S.C. § 1300 et seq. Plaintiff is the subrogee of the consignee of one hundred thirty-five lifts of hot rolled steel angles, channels, and flats which were loaded aboard the defendant vessel in Antwerp, Belgium, about October 3, 1967, and were delivered in Cleveland, Ohio, about October 18, 1967. The steel was shipped under three bills of lading, numbers 13, 47, and 48. All of the bills were marked "partly rust stained". In addition, bill of lading 47 was marked "of four bdls., 1 strap broken; of two bdls., 2 straps broken".

When the cargo arrived in Cleveland, it was noted that some of the steel was heavily rusted, and that water was lying in some of the angles. It was also noted that the straps on the bundles of flats were broken, that the pieces of steel were adrift, and that some of them were bent.

After the steel was unloaded, it remained in the open on the dock of the defendant stevedoring company for some considerable time, in spite of the efforts of the consignee to remove it. When it was finally delivered to the ultimate consignee's warehouse, it was badly rusted, and considerably depreciated in value.

Although there was considerable dispute as to the exact dollar amount of the damage, the evidence was clear that it was in excess of the sum of Five Thousand, Six Hundred Forty-Five Dollars and Thirteen Cents ($5,645.13) paid and claimed by the plaintiff.

In addition to disputing that there was any damage to the steel, the defendants claimed that the steel was in the condition shown on the bills of lading, and, alternatively, that it was the consignee's fault that the steel lay out in the weather on the docks and thus became still more rusty than it had been.

Considering the rather small amount involved, the case was tried with unusual vehemence, requiring two full days of trial without a jury.

The evidence established that while hot rolled steel was usually handled and shipped without much protection from the weather, and showed some rust stains, the condition of the steel in question was not merely rust stained, but was heavily rusted at the time it was unloaded from the defendant vessel.

The evidence also showed that while a small amount of rust does not affect the value or marketability of hot rolled steel, heavy rusting will affect it, since it will require extra processing to remove the rust, and this processing may either render the steel unusable for some of the purposes for which such steel is commonly used, or may reduce its dimensions, thus again affecting its usefulness. When ultimately received by the consignee, the steel involved here had been thus damaged by rusting. The evidence also showed that while hot rolled steel can withstand a certain amount of exposure to the elements without rusting so badly as to be damaged, once the rusting reaches a point of heavy rusting, additional exposure to the weather will very quickly cause serious damage.

The evidence also showed that the steel reached Cleveland at the peak of the defendant stevedoring company's busy season. As a result, this defendant was more concerned with its own convenience than with the condition of one cargo of steel. Although importuned by the consignee for delivery of the steel, which lay rusting on its dockets, this defendant refused to deliver the steel until it suited its convenience to do so.

The only real problem in this case is the apportionment of the damages suffered between the carrier and the stevedoring company. Plaintiff suggests that the stevedoring company is the agent of the carrier, and thus the carrier should be held liable for the full amount of the damages. The carrier suggests that its responsibility terminated when the steel was unloaded from the ship and placed on the dock, the stevedoring company being an independent contractor after that time. The stevedoring company suggests that it is the custom of the Port of Cleveland for stevedoring companies to be as dilatory and careless as they please with cargo received, and anybody who makes the mistake of shipping to the Port of Cleveland has to suffer the consequences of this custom.

The Court finds that the steel was damaged during its carriage across the ocean, and was not, when unloaded, in the condition described by the bills of lading; that the steel was further damaged by the defendant stevedoring company's delay in delivering the steel, including its ignoring, for its own purposes and reasons, the provision for direct overside delivery of the steel listed on bill of lading number 13.

The damages to the steel amount to at least the sum of Fifty-Six Hundred Forty-Five Dollars prayed for. Approximately half this damage occurred aboard ship, and the balance occurred while the steel was in possession of the defendant stevedoring company.

Judgment is rendered against the defendants SS Hermine, Navibel, S.A. and Union Industrielle & Maritime in the sum of Two Thousand Eight Hundred Twenty-Two Dollars and Fifty-Six Cents, and against the defendant Cleveland Stevedore Company in the sum of Two Thousand, Eight Hundred Twenty-Two Dollars and Fifty-Seven Cents.

This opinion will serve as the Court's findings of fact and conclusions of law. Counsel shall settle the form of order in accordance with the Rules of this Court.